## ARMSTRONG PACKING CO. v. CLEM.

(Court of Civil Appeals of Texas. Dallas. Nov. 9, 1912. Rehearing Denied Nov. 30, 1912.)

1. NEGLIGENCE (§ 27*) — DANGEROUS SUBSTANCES—LIABILITY OF MANUFACTURER.

The liability of a manufacturer of soap for injuries to a consumer from poisonous substances therein does not rest upon contract or privity, but arises from its duty to avoid acts dangerous to the lives and persons of others, and hence a person injured may recover, although there is no contract or privity between him and the manufacturer.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 25; Dec. Dig. § 27.*]

2. NEGLIGENCE (§ 27*)—ACTIONS—SUFFICIENCY OF EVIDENCE.

Where a manufacturer of soap knowing that poisonous and injurious substances were necessary in its preparation, and that, if not neutralized in manufacturing, injury was liable to result from its use, placed it upon the market and injury resulted from its use, these facts sufficiently showed failure to use care in its manufacture to render it liable.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 25; Dec. Dig. § 27.*]

3. NEGLIGENCE (§ 66*)—CONTRIBUTORY NEGLIGENCE—ANTICIPATED DANGERS.

A purchaser of soap is not required to test it for poisonous substances, but, where he is ignorant of defects therein, may assume that it is fit for use.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 86–89; Dec. Dig. § 66.*]

4. TRIAL (§ 41*) — SEPARATION AND EXCLUSION OF WITNESSES.

It is within the trial court's discretion to permit particular witnesses to remain in the courtroom where the rule is invoked.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 101–105; Dec. Dig. § 41.*]

5. TRIAL (§ 41*) — SEPARATION AND EXCLUSION OF WITNESSES.

In a husband's action for injuries to his wife in which the rule was invoked, the court did not abuse its discretion in permitting both the husband and wife to remain in the courtroom; the husband being a party, and his wife having a substantial interest in the action.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 101–105; Dec. Dig. § 41.*]

6. TRIAL (§ 263*)—INSTRUCTIONS—FORM.

It was not error for the court, after stating the case, and giving some principles of law applicable thereto, to give such special charges prepared by the parties as were applicable.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 662, 663; Dec. Dig. § 263.*]

7. EVIDENCE (§ 199*) — DEMONSTRATIVE EVIDENCE—EXPERIMENTS AND TESTS.

In an action against a manufacturer of soap for injuries, where there was testimony that a poisonous substance was discovered therein causing it to effervesce when vinegar was poured thereon, it was not error to permit plaintiff to test the soap by pouring vinegar over it in the presence of the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 683; Dec. Dig. § 199.*]

8. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—ERROR FAVORABLE TO APPELLANT.

If it was error to permit such experiment it was not prejudicial to defendant where no effervescence was produced by such test.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

9. NEW TRIAL (§ 52*)—CONDUCT AND DELIBERATIONS OF JURY—MANNER OF ARRIVING AT VERDICT.

A new trial because the jurors set down the amount of damages each thought proper and divided the aggregate by twelve, was properly denied where it appeared that there was no prior agreement that the quotient should constitute their verdict and it did not appear that such quotient was the amount finally returned.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 101–105; Dec. Dig. § 52.*]

10. APPEAL AND ERROR (§ 757*)—BRIEFS—CONTENTS.

Assignments of error complaining of the refusal of special charges will not be considered, where the charges are not copied in appellant's brief, nor reference made to the page of the record where they can be found.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3092; Dec. Dig. § 757.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by A. Clem against the Armstrong Packing Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Flippen, McCormick, Gresham & Freeman, of Dallas, for appellant. Gibson & Calloway, of Dallas, for appellee.

RAINEY, C. J. This is an action to recover damages for personal injuries to appellee's wife, Emma Clem, brought by appellee against appellant, Armstrong Packing Company, alleging, in effect, that appellant was a manufacturing company, manufacturing, among other things, a certain brand of soap labeled "B. & B.," or "Biggest and Best," which was placed on the market and sold, through retailers to ultimate consumers, the public generally; that some of this soap was purchased by appellee from a retailer for use, carried home, and used in the laundry of their family clothes, from the use of which said soap appellee's wife became poisoned and injured; that her hands, arms, and other parts of her body that came in contact with the soap, or came in contact with her hands and arms after the use of the soap, became poisoned and inflamed, causing her great pain and suffering, rendering her unable to perform her household duties, and she has become an invalid and will so remain the rest of her life; that appellant was negligent in the manufacture of said soap and placing it upon the market. Appellant answered by general and special exceptions and general denial, and specially that the soap was manufactured by it exclusively for sale to jobbers, never sold to retail dealers, nor did it warrant same to them. "The soap was not represented to be for bathing purposes, but only for laundry and ordinary cleaning purposes; that the ingredients of same are purely vegetable products, and that the soap does not contain any oils or animal greases, and that the same is free from all excessive poisonous, injurious, or deleterious ingredients and substances; that the defend-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

ant has used and uses the greatest care and caution in seeing that the soap was made only from harmless substances, and that there was excluded from it any injurious, poisonous, or deleterious substances whatever in the finished product; that it would have been impossible for such injuries as are claimed by plaintiff to have been sustained by his wife from using the brand of soap known as Armstrong's B. & B. soap, but that such injuries, if they occurred at all, were not caused by said soap, but were caused by some other agency to the defendant unknown. The defendant on the trial filed a supplemental answer alleging contributory negligence on the part of the plaintiff and his wife; that Mrs. Clem was performing her labor while in a delicate condition, which caused or aggravated her injuries; that she was guilty of negligence in not immediately ceasing when she began to discover that something was injuring her hands; that the plaintiff and his wife were guilty of negligence in not at once seeking the advice of a physician; that the plaintiff and his wife were both guilty of contributory negligence in using unsterilized scissors to open the blisters on the different parts of her body, and that the plaintiff and Mrs. Clem were guilty of contributory negligence in permitting the watery substances from the blisters to come in contact with other portions of her body." A trial resulted in a verdict and judgment for appellee for $1,500, from which the packing company appeals.

The assignments that the court erred in overruling the general exception to plaintiff's petition, and the assignment that the evidence is insufficient to sustain the verdict and judgment, raise practically the same issues, and therefore they will be considered in the same connection. The evidence, in substance, substantially supports the allegations of plaintiff's petition, in that it shows that the appellant was manufacturing washing soap for the market, selling same to jobbers, the jobbers selling to retailers, and they, in turn, selling to consumers. A retailer sold some of this soap to the appellee, whose wife used it in washing the clothes of the family, and she was injured by the use of the same in the manner alleged by plaintiff. The formula used by appellant for making the soap necessarily contained poisonous ingredients, which become harmless in the proper preparation of the soap. In the batch of soap sold to plaintiff the poison used was not neutralized, but it contained a sufficient quantity to injure plaintiff's wife in the use thereof, for which it was intended. The evidence is sufficient to show that appellant was negligent in preparing the particular batch of soap sold to plaintiff. This case, as shown by the record, was tried on the theory and supported by the facts that appellant negligently manufactured and placed upon the market the soap in question, which contained injurious and poisonous substances, from the use of which the injuries sustained by plaintiff's wife proximately resulted.

Appellant contends "that, under well-settled authorities, there was no question of warranty as between Armstrong Packing Company and the plaintiff in this case, but only that Armstrong Packing Company rested under the duty imposed upon a manufacturer not to put upon the market a commodity that was unsuitable for use by the public, and which the public could not use without injury. Even in regard to this duty, the manufacturer is not an insurer, and is held to ordinary care."

[1] The liability of appellant in this action does not rest upon any contract or privity between appellant and appellee, but from the duty which the law imposes upon the manufacturer to avoid acts in their nature dangerous to the lives and persons of others. Though no contract or privity existed between appellant and appellee, yet, as appellant was manufacturing and placing the soap upon the market, it is liable primarily to any one buying and using it for the want of care in the preparation of the soap.

[2] That appellant failed to use care in its preparation is sufficiently shown by the evidence. It knew that poisonous and injurious substances were necessary in its preparation. It knew if too much of the poisonous ingredients were used, and not neutralized in manufacturing it, that injury was liable to result from the use thereof. It knew by the proper saponification the poison would become harmless. The soap was placed upon the market and injury resulted from the use thereof, which shows to our minds that appellant failed to use care in the manufacture of this particular soap, or the injury would not have happened, which fixes the liability of appellant. Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455; Tomlinson v. Armour Co., 75 N. J. Law, 748, 70 Atl. 314, 19 L. R. A. (N. S.) 923. In the case of Thomas v. Winchester, supra, it is held that a dealer in drugs and medicines who carelessly labels a deadly drug as a harmless medicine, and places it upon the market, is liable to all persons who, without fault on their part, are injured by using it by reason of such label. Such liability does not arise by reason of contract or privity between the dealer and the person injured, but out of the duty imposed by law upon the former to avoid acts which by their nature are dangerous to the lives of others. In Tomlinson v. Armour, supra, a suit for injury to a consumer caused by eating canned meat, the following language is used, viz.: "The fact that the defendant was the manufacturer, presumably having knowledge, or opportunity for knowledge, of the contents of the cans and of the process of manufacture; that it put the goods upon the market for sale by dealers to consumers, under circumstances such that neither dealer nor consum-

er had opportunity for knowledge of the contents; the fact that the goods were thus manufactured and marketed under circumstances that imported a representation to intending purchasers that they were fit for food and beneficial to the human body; that in the ordinary course of business there was a probability (it being, indeed, the very purpose of the defendant) that the goods should be purchased, and used by parties purchasing, in reliance upon the representation; and that the defendant negligently prepared the food so that it was unwholesome and unfit to be eaten, and poisonous to the human body, whereby the plaintiff was injured— make a case that renders the defendant liable for the damages sustained by the plaintiff thereby." The cases cited we think are sustained by the weight of authority and are especially applicable to the case under consideration.

[3] There was no occasion for plaintiff to test the soap for poisonous substances, nor did he do so, and he had a right to rely upon it being fit for use. He nor his wife did not know of its defect, but were ignorant thereof, and its use was without fault on their part.

[4, 5] The court did not err in permitting the plaintiff and his wife to remain in the courtroom during the trial; the rule to sequester the witnesses having been invoked. It is settled law in this state that such a matter is in the discretion of the court, and there was no abuse of such discretion in this instance. Plaintiff was a party, and his wife had a substantial interest therein. Colbert v. Garrett, 57 S. W. 853; Gro. Co. v. Martin, 57 S. W. 706.

[6] The court in its charge stated the case and gave some principles of law applicable to the case, and then proceeded to give to the jury such special charges prepared by the respective parties which he considered applicable. Appellant complains that the court erred in refusing its request to charge the jury generally and fully as required by law. This manner of charging the jury is not contrary to law, and the assignment is without merit.

[7, 8] The court did not err in allowing the plaintiff to make a test before the jury by pouring vinegar over the soap, especially as no harm resulted to appellant therefrom. There was testimony that a poisonous substance was discovered in the soap used by appellee's wife by pouring vinegar thereon, which caused it to effervesce. In the test made before the jury no effervescence was produced by the vinegar being poured on the soap. There was no error in the court's overruling the eleventh ground of appellant's motion for new trial.

[9] The complaint is that the jury reached their verdict by lot; that they agreed beforehand to set down the amount each thought proper, to divide the aggregate by 12, and

the quotient would constitute their verdict. We do not think this contention is sustained by the record. The court heard all the jurors on this matter, and he was justified from the evidence to find that each juror stated an amount; that the aggregate was divided, but that there was no agreement beforehand that the quotient so ascertained should constitute their verdict, or that the quotient so found was the amount finally returned.

[10] The eleventh and twelfth assignments of error complain of the giving of plaintiff's special charges Nos. 3 and 4. Said special charges are not copied in the brief of appellant, nor is there any reference to the page of the record where same can be found. Under such circumstances, we do not feel called upon to consider said assignments.

All other assignments have been considered, and, finding no error in the record, the judgment is affirmed.